May it please the court, Edward Himmelfarb with the Department of Justice representing Heather Weyker who is deputized as a federal officer to help with the federal sex trafficking investigation. Last year in Farah against Weyker, this court held that even if a federal law enforcement officer allegedly lies, manipulates witnesses and falsifies evidence, the person who claims injury from this behavior may not be given action for damages. This court held that it's up to Congress to decide whether there should be a damages remedy. The Supreme Court's decision this February in Hernandez against Meza firmly reinforced the idea that considerations of separation of powers almost always favor leaving it to Congress to decide whether a damages remedy should be created. The same conclusion applies here. There's no Bivens remedy for the post indictment portion of the claim. This follows directly from Farah and there's also no Bivens remedy for the pre-indictment portion which is a necessary consequence of the court's reasoning in Farah as well as in Hernandez. Finally, this court could decide the case on the basis of qualified immunity. The plaintiff's claim fundamentally turns on the materiality of Weyker's allegedly false statements to Officer Beeks. They claim that Weyker's statements were the only reason that Officer Beeks felt he had probable cause, but they acknowledge that Officer Beeks conducted a further investigation after hearing from Weyker. For example, they allege that after hearing from Weyker, Officer Beeks spoke to Muna Abdulkadir, the witness in the sex trafficking investigation, and they summarized the conversation in the complaint based on the trial testimony of those two. So the plaintiffs are the ones who brought the trial testimony in the first place and then they attach their own excerpts of trial testimony through their opposition to dismissal and in fact their entire fact section of their opposition to dismissal in district court is based on trial testimony. And because of this, the district court should have considered that testimony in deciding whether Weyker's allegedly false statements were material to the determination of probable cause. Now I'd be happy to try to answer any questions from the court in whichever part of the case the not to consider any of the materials outside the pleadings. If that is determined to be an appropriate ruling, not an abuse of discretion, what happens to the case then? Well, on the issue of qualified immunity, your honor, you still have to look at the allegations of the pleadings alone. Right, so my question is, is that sufficient then just with the complaint? That's right, does the complaint satisfy the Iqbal plausible requirement, whether it's pleaded non-conclusory plausible allegations of a constitutional violation of a clearly established constitutional violation. So yes, even if you decide that district court properly declined to decide based to look at the trial transcripts, you still have to look at the complaint and see whether there are non-conclusory allegations that support a plausible claim here. Right, and would you say that they are non-conclusory? No, we would say that they're non-conclusory. We discussed this somewhat in our brief. They make general allegations that this was the only reason, for example, paragraph 27, the only reason officer Beeks felt he had probable cause was this that officer Beeks went on to interview Muna Abdul-Qadir, the witness, and came up with some information from her. Now they claim that that information was nothing, but he did a further investigation. Really, that's not really in dispute here. So the allegation that was the only thing is a conclusory, and it's kind of undermined by their own complaint. Let's get off qualified immunity for just a moment. Let's assume that we agree with you that there's no Bivens action here based on the Farrar case, and wouldn't the appropriate thing to do would be to do what we did there, which is basically leave qualified immunity for later, send it back to the district court, also have the district court answer the under color of a state or a federal official at the time, and if she wasn't acting as a state official, of course, that provides an independent reason for dismissal down the line. Well, your honor, I think the court should still look at qualified immunity, but if the court does not want to look at qualified immunity, wants to put it off, we don't agree with that position, but if the court decides that, then the answer is yes, you would have to remand it. We did not raise 1983 on appeal. That would have to be decided by the district court unless the court agrees with us on qualified immunity. Yes, that's the correct procedural situation, but I think that qualified immunity should still be addressed here. I mean, you have a different case here. Qualified immunity basically says look at the specific allegations with the specific defendant officer, and this is a different case. We have a different record here, and if you'll give me a second, I'll explain why there's a case. That case, when it got to appeal, there were six plaintiffs originally. Eventually, three of them dropped out, but if you go to the district court, what that case came up from was 21 separate plaintiffs in 21 separate cases. We moved for a consolidated motion to dismiss in district court in that case, so all 21 cases were considered in that motion to dismiss. 20 of those 21 plaintiffs were people involved in the sex trafficking case. The only one who was not involved in the sex trafficking case was Yassin, the friend of the plaintiffs here, and so unfortunately, when you deal with 21 cases and only one is in a slightly different position, that person doesn't get the attention from the briefing and the record that the other ones do, and so in that case, there was no trial transcript from this criminal proceeding here. The focus was entirely on the 20. I didn't say entirely. That's a slight overstatement. The focus was definitely on the people involved in the sex trafficking investigation, so you don't have the same record in that case. We also, I have to say, when we had six plaintiffs in the court of appeals, our briefing focused on the five of them who were involved in the sex trafficking case, and maybe looking back on that, maybe we should have spent more time on dealing with Yassin, but I think that explains why that record was not the same as this case. In this case, there were two plaintiffs. They were both involved in this witness intimidation case. The parties below focused on the witness intimidation case completely. Both sides introduced trial testimony. The plaintiffs, as I said before, the plaintiffs' opposition to dismissal focuses heavily on the trial testimony, and when that's presented to the district court, I think it's really a mistake for the district court not to consider that material. I mean, one of the cases we cite in the brief, I think I would like to emphasize here, is called Roe against Nebraska. In that case, the plaintiff made some allegations, and the defendants were raising statute of limitations defense. One of the things they did when they moved to dismiss, they attached the plaintiff's testimony before a legislative committee to indicate that the plaintiff knew about the claim at an earlier date, put it outside the limitations period, and so the district court in that case considered that material, the testimony of the plaintiff in front of a legislative committee, and that's really pretty close to what we have here, and in this case, maybe even closer, because what we're talking about is the plaintiff's own criminal trial, at least Ahmed's criminal trial. Mohammed was dismissed shortly before trial, but Ahmed and her friend Yassin were taken to trial. They were both acquitted, and this is the testimony that I think if the district court looks at it, or if this court looks at it, will show that Officer Beeks had independent probable cause, independent totally of Whiteberry's allegedly false statements, and that's why it's really important, I think, for this court and or the district court to consider that material. That sounds like a lot of facts, and I think the thinking, well, I can say what the thinking was in the earlier case, was that the undercover state law is a threshold issue, and so if the district court were to find that Whiteberry was indeed acting as a federal official, you'd never have to get to qualified immunity, so I guess my point would be you've given us a lot of factual differences in terms of how it's been briefed in the procedure, but I don't know that you've convinced me that this is a different case. Well, the thing is, the way the Supreme Court has talked about qualified immunity, it's insisted that courts look at qualified immunity at the earliest possible stage, and I think the problem with doing what, Your Honor, you're suggesting is that it postpones the determination of qualified immunity until after this 1983 thing is looked into. In this case, I think it's a little bit, you know, we're talking about in the sex trafficking case, there was a big question, was Weicker deputized? When was she deputized, and had she done some work before she was deputized? In these cases, there's no issue about when she was deputized. She was deputized in August, I believe it was August 2010. These events took place in June 2011. She had been deputized for the entire aspect of this case, so it seems like an almost frivolous issue to us, and I think that based on what the Supreme Court says about determining qualified immunity at the earliest possible stage, it would be really important for this court to give full consideration to that. I'm not sure if you've addressed this yet, but why isn't the claim for the unlawful arrest different than what was addressed in the bulk of Farrar, the post-indictment claim, and for purposes of Bivens? Well, I mean, the thing is, under Abbasi and Hernandez, the first thing you have to do is look, is it a new context? And what we've argued in this case is that it is a new context for many of the same reasons that the post-indictment is a new context. Her alleged misdeeds are different from those in Bivens. I mean, think about what Bivens is about. You had the six agents of the FBI going into his apartment without a warrant. They searched him, they threatened to arrest his family, they searched the entire apartment. Stem to stern, I think, was the language they used. He was strip-searched at the court. And this is something, Weicker was 800 miles away from these events when she made the phone call to Officer Beeks. So is the distinction the act of arrest? Because we do have an allegation of an unlawful arrest. So are you distinguishing the nature of this arrest or the nature of Weicker's role in it as taking it not Bivens? I'm sorry. I'm saying Weicker's role is the key factor here, at least one of the key factors. If you look at the types of activities that this court said that she was involved in, which are different from that in Bivens, most of those apply equally to the indictment part of the case. In addition, the mechanism of injuries, alluding to this a minute ago, is indirect. She gave some information to Officer Beeks, who then did his own independent investigation, and he determined that there was probable cause. That's different from a typical Bivens case. If I can interrupt you there, if you honor what they are saying, which is I think the information to Beeks that was knowingly false, he turned directly around and conducted the unlawful arrest. Does that scenario weigh off of Bivens? Yeah, I think because the question is, did he have independent probable cause? He obviously did a further investigation after she gave him this information. I'm sorry, I lost my train of thought there. I was going to say that what she did, we don't dispute this, what she did is she caused him to investigate. She did an independent investigation after she gave him this information, and he determined, along with his sergeant, that there was probable cause to arrest, and that was their decision to make, not Bikers. So that is a big difference. If the court has no questions at this point, I'm going to move on to Stare Decisis. Let me say that again, Stare Decisis. Less than one year ago, Judge Strauss wrote the opinion in Farrar, and since that time, that case has not been overruled or overturned. It is the law of this circuit, and this court must follow it. In Farrar, Judge Strauss went to great lengths to point out how different Yassin's case was from the other consolidated appeals before the court. Those differences are what make all the difference in deciding this case. The Weicker cites provisions, portions of the holding that dealt with the five sex ring players as being a holding that should apply to appellees in this case. The court went to pains to say, whatever we said about these five individuals, these men who were allegedly part of this sex ring, does not apply to Yassin. It is disingenuous for the appellants to argue that now the provisions of the opinion that did not apply to appellees in this case. Now, let's keep in mind, this isn't an argument that we're making that Ms. Mohamud and Ms. Ahmed's case are similar to Ms. Yassin's. They're not similar, they are identical. They were all three arrested by the same officer on the same night at the same place for the same alleged crime and they were all three transported to the same jail together in the same car. They were all three eventually charged with a federal crime and the only evidence that they had engaged in any activity that would constitute a federal crime was provided by Heather Mohamud. The Wiker's counsel argues that the complaint standing on its own isn't sufficient to create a material issue as to whether or not Wiker was the causative reason for the probable cause determination. Now, keep in mind, on the way to jail, Officer Beeks told all three women, you are going to jail, you are being arrested because of what Heather Wiker told you. Now, that's not us simply parroting language from the jury instructions, that is a very specific statement and it goes to what Officer Beeks knew and what he was relying upon to effect the arrest. He specifically said it was Wiker. Are there any material differences between the complaint in this case or the complaints in this case and the complaint in Yassin? There are no material differences. Let me point out the differences that Wiker's counsel has found. One, in their brief they say there were different law firms involved. That's clearly immaterial. Two, they say, well, Yassin pled out a Fifth Amendment claim, a Sixth Amendment claim, a Fourteenth Amendment claim, perhaps even a Seventh Amendment claim. Well, we didn't have to plead those claims because we knew this was a Fourth Amendment case going into it. We had the benefit of Manuel B. Joliet. We knew. It's not a question, is this Fourth, is this Eighth? We knew not to bring a Brady claim. By the time Yassin's case reached this court, it was exactly the same as the posture before the court today with respect to the claims of our clients, Apelles, Mohamed, and Ahmed. And as well as the allegations in the complaints? The allegations in the complaints are, in all material respects, identical. Now, it is true that we had the benefit of looking at trial testimony. And it is true that we pointed out various aspects of the trial testimony that Officer Beeks relayed regarding his investigation. For example, we point out that he spoke to the witness in the federal sex-offering case, Abdelkader, and that she never said a word, not a single word, about Apelles or Ms. Yassin threatening her in regards to the case. Now, by the time we got to the motion to dismiss, the Ms. Weicker's counsel wanted to take the record and make it into a review of everything that had happened prior to the civil action. Let's open the door and have every statement and every proceeding be fair grounds, fair game, for the district court to consider on a motion to dismiss. Judge Erickson, the district court judge, she decided rightfully, I'm not going to weigh into that thicket. But let's be clear. If she had weighed into the thicket, she could not look at Officer Beeks' testimony, which, if you read his testimony and you read the way it's characterized by Ms. Weicker's counsel, you'll see they're taking some liberty in reaching the conclusions they reach about what he said. For example, they say that Beeks reviewed a video and that that supported probable cause. Beeks doesn't testify to that fact. He says I looked at a video, period, full stop. We can't use that as a basis to discount what he told the plaintiffs or the appellees in the car. And even if you could, that creates a dispute of fact. And for purposes of a Rule 12 motion, the appellees are entitled to the benefit of that. You started out with Farrar, and I want to have a conversation about that. I know the government's urging us to decide qualified immunity. I'm assuming that since the Yassin's case is exactly identical to these, that the government probably loses on qualified immunity under Farrar, because that's what we decided with respect to Yassin. But I think you're overstating the holding a bit when we're talking about Bivens. As you may recall, on Yassin's case, we didn't address the Bivens question because the government had failed to meaningly brief it. And you heard opposing counsels sort of reference that. But the analysis from the other plaintiffs in that case, in other words, the earlier part of the opinion, would apply equally here. In other words, we would look at the same things under Ziegler, the two, is this case meaningfully different, etc. And I just wonder, I want you to make your best case that this case does fall under Bivens when the five plaintiffs in Farrar do not. Well, the five plaintiffs in Farrar were all arrested after a criminal complaint had been issued pursuant to a warrant with judicial involvement. The five plaintiffs in Farrar were all the subject of ongoing investigations conducted under the auspices of the Tennessee U.S. Attorney's Office in conjunction with the FBI. In those investigations, Weicker played a bit role. She was deputized for the purposes of those investigations. Now, let's be clear, her deputization doesn't necessarily mean that whatever she does during that time frame falls under the auspices of her deputization. She could easily do things, even if she was deputized, that don't necessarily fall under her authorization. In those circumstances, when she's acting ultra viris or outside the scope of the deputization, Bivens doesn't apply. So now, having set the stage for the reasons why the court determined it would be a new context with respect to those five appellees, let's look at Yassin, Mohamud, and Ahmed. Here, not a single outside person was involved in the decision to arrest the appellants. Here, it was solely Heather Weicker contacting a police officer in Minneapolis, identifying herself, as a St. Paul sergeant. There was no entanglement with either a U.S. attorney, the FBI, some other outside agency. This was, as in Bivens, street-level police officers working in conjunction without probable cause to effect a warrantless arrest and seizure. But this is awfully, you know, in terms of the type of conduct you're talking about. Both of them are sort of unlawful arrest claims. Both of them involve the same police officer making false statements. Now, I understand there are different people involved, right, in each of these cases. I understand that. But the basis for these arrests were false statements made by the same police officer. I find it hard to distinguish, in the end, that the five plaintiffs and Farah did not, you know, that it was a new context, but this one is not. I just can't get there. Was there some factor? You know, in that opinion, we talked about differences between this case and Bivens and Davis and some of these. Is there some factor that we talked about in that case, specifically talked about, that is not present here? Not a fact, but a factor that we discussed. I think, as I understand it, at the end, you concluded there's three significant differences that took this out of the Bivens context. One was the actions challenged. Now, here, I think this is very different when an officer picks up a phone without having conducted any witnesses, without having done anything, and makes a single phone call to another officer. So the actions challenged are different in the sense that when you're dealing with an investigation that involves numerous agencies and months, months if not years of work done in conjunction with a U.S. attorney potentially directing the investigation or the FBI directing the investigation, the mechanism of injury is different because you have to factor in all those different variables. It isn't a direct, the line, the direct line of causation isn't apparent and this would be no different than if Weicker had been walking next to Beets and said, those are the girls that I've got documentation and information on and they've been harassing witnesses and they've been trying to beat up witnesses in this case. One of them dates a Somali outlaw. One of them has a history of attacking this particular witness. If she were right next to him, would we even be talking about whether this was different from Bivens? I don't think so. And the fact that it happened over the phone doesn't change the fact that the mechanism of injury was essentially the same. A street level instantaneous decision to violate someone's cause. I've talked about the actions challenge. We're not challenging a grand jury decision as they were in Farah. We're not challenging the decision of the Tennessee U.S. attorney's office to even look at the case as they were in Farah. We're not challenging decisions made by a magistrate judge to issue an arrest warrant or to allow the complaint to issue. What we're challenging is something that happened instantaneously without any forethought, without any investigation, without Heather Weicker even knowing who the appellees were. And in this case, because of those differences, the kind of proof required is very different. This is on all fours with Manuel V. Joliet. All we need to show is that Weicker lied, planted false evidence, and that caused the unlawful arrest and seizure. We don't have to get involved with talking to U.S. attorneys, talking to the FBI, looking at grand jury testimony, because this happened in an instant. Under these circumstances, the new concept that applied to the five individuals in Farah does not apply to what happened here. And in fact, if Weicker was not a federal deputy, clearly we wouldn't be talking about Bivens, but there would be no hesitation to say, of course that's a Fourth Amendment violation. We follow what the court did in Manuel, because that Section 1983 jurisprudence applies here. And in certain circumstances, when we get through discovery, we very well may be able to say there is no distinction between pre-indictment and post-indictment confinement. Judge Kelly, could I ask one additional follow-up question? So you mentioned Manuel. Manuel was a Section 1983 case. I'm going to ask you, to give you a chance to respond, the same question that I asked opposing counsel, which is, assuming that you lose, and we haven't made that determination yet, on the Bivens issue, is the proper remedy to send this back to the district court to figure out the undercolor of state law, or would you have us, as the government would, decide qualified immunity? I think the case has to go back, because the Section 1983 issue has to be decided first. Second, the argument that we need to make a quick decision, an efficient decision, on qualified immunity, doesn't apply in this case. We're three years up, and now the other cases are before the district court, and they're continuing the litigation against Weicker. This doesn't end the litigation in any way. So I think the district court would be the appropriate vehicle for deciding the import of extraneous materials that they ignored. If it was found that she abused her discretion, the district court judge, I likewise think the Section 1983 issue has to go back, and I also think that given the differences between Farrar, and the five individuals in Farrar, and Yassin, and the Pelley's here, that the district court should be the first one to make a decision about whether or not this presents any context. Okay. And I have one follow-up question on that. If in fact, well, your opposing counsel suggests that whether or not she was a federal agent is sort of clear-cut, and if I'm understanding your position, you believe that's something that the district court still needs to determine. Am I a non-issue in this case? Yes, I think there's a very strong chance. I didn't want to get into extraneous materials, but if you look at some of the documents that were presented, given the scope of her deputization, and you look at what Officer Weicker did with respect to Pelley's and Ms. Yassin, it's clearly outside the scope of her deputization. Thank you. Thank you. I think you have about maybe just about a minute or about. Just less than a minute. I want to say one thing really quickly about Manuel, because they keep invoking Manuel, but if you look at the Supreme Court's opinion in that case, it repeatedly says that the allegation is that their determination of probable cause based only, solely, or exclusively, I forget which words they use, but they use multiple words on the false drug tests. So I don't think that has anything to do with this case, because what we're saying here is that even if Weicker made false statements to Officer Beeks, which we don't concede, even so, Officer Beeks's further investigation supported probable cause independent of Weicker's statements. So that's why it's not relevant. I wanted to ask you one question, which is, you know, I reread that portion dealing with Yassin and the Farah opinion, and it seems pretty clear that Weicker did not get qualified immunity for actions with respect to Yassin. Is there anything that distinguishes it here, where Weicker would be entitled to qualified immunity with respect to these two, but not Yassin? Yes, because we have a different record in this case. That's the primary reason. There's a totally different record in this case. As I said earlier, the Supreme Court wants courts to look at qualified immunity specifically in terms of a particular complaint, and so you have to do it separately. You can't just say, well, we decided it for somebody else who was in the same boat. You have to say, these people have alleged the following, and based on those allegations, either the officer is entitled to qualified immunity or the officer is not entitled to qualified immunity. So I think it has to be done separately. One other quick thing, if you can allow me a couple seconds here. Go ahead. Mr. Mueller said the FBI was not involved in this case. That's not correct. The FBI was involved, and the agent of the FBI interviewed these three plaintiffs during this whole pre-arrest time period, and they are challenging the grand jury indictment here. That's part of the complaint. And since I'm out of time, unless the court has further questions, I will sit down. Nice. Anything else? Thank you both for your arguments. We appreciate it, and we will take the matter under advisement. Thank you.